UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Thomas J. Reese, Jr., | : | Case No. 5:08CV0260 |
| Plaintiff | : | Judge James S. Gwin |
| v. | : | Magistrate Judge David S. Perelman |
| Commissioner of Social Security, | : | **REPORT AND RECOMMENDED DECISION** |
| Defendant | : | |

This action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of defendant's final determination denying plaintiff's claims for disability benefits, (DIB), 42 U.S.C. §§416, 423 and supplemental security income benefits (SSI), 42 U.S.C. §1381 et seq., is pending decision upon the parties' submissions on the merits, pursuant to which plaintiff seeks an order of remand and defendant seeks final judgment upholding the decision below.

Plaintiff's right to benefits under both programs is dependent upon a showing that he is disabled, as that term is defined in the Social Security Act. Disability is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for not less than 12 months." 42 U.S.C. §§423(d)(1), 1383c(a). The programs differ with regard to other qualifying criteria. The disability benefits statute requires "fully insured" status, which focuses on the period of time the claimant has worked while covered by Social Security. The SSI program focuses on income and resources as basic eligibility factors.

Plaintiff applied for benefits on March 3, 2004, alleging an onset date of January 23, 2004. In an accompanying Disability Report - Adult the questions "What are the illnesses, injuries or conditions that limit your ability to work?" and "How do your illnesses, injuries or conditions limit your ability to work?" were answered "Severe congestive heart failure—my 'ejection fraction' is 5-10% normal is 55% " and "often have severe trouble breathing—can't do much physically. Shortness of breathe [sic]."

Upon denial of plaintiff's claims on the state agency level hearing de novo before an Administrative Law Judge (hereinafter ALJ) was requested. Evidentiary hearing, at which plaintiff was represented by counsel, was held on March 10, 2006. Also testifying at that proceeding were a medical expert, Dr. Richard Katzman, and a vocational expert,

At that hearing the plaintiff testified that he was not working on the advice of his doctors who "said we don't want you doing anything. You have a extreme heart condition. We don't know how long you are going to make it, and you're a candidate for a heart transplant." Having so stated, the plaintiff then stated that he was not on any list to receive a heart transplant. He further testified that he suffered episodic chest pains and heart palpitations, was constantly fatigued and had to lay down for a couple of hours" three or four times a week.

When examined by the ALJ Dr. Katzman declined to offer an opinion as to the plaintiff's residual functional capacity. He stated that there was insufficient medical information and "he needs further—either the records or a consultative examination in my opinion."

When the ALJ inquired of plaintiff's counsel if whether there were records for the last two years at the facility where the plaintiff received his care her response was that "It's my understanding that he's only been there once, and they didn't do any additional kind of testing," to

2

which the plaintiff added he had seen LuAnn Bailey, who is a nurse practitioner, not a physician.

Dr. Katzman thereafter stated:

> The issue here is that there was only a short—at that time, a very short period of treatment, so there's—and there was—and then when he came back and started treatment, there was some objective evidence then of treatment. I don't know where he is now and it would be nice to know. It would clarify everything.

He strongly suggested that additional information be obtained from the plaintiff's treating physicians, including an echocardiogram if possible.

The ALJ then inquired of counsel "So do you want to try to get whatever you can from Akron?" to which counsel responded "We will get whatever we can from Akron. I believe it's only going to be one appointment, right, since May of 04." That was followed by:

ALJ: How about asking them for some sort of assessment?

ATTY: Well, it's an issue of my client is not able to pay, and that's why he hasn't been able to treat there.

ME: Don't they have—for people who are unable to pay? Don't they have assistance programs?

CLMT: I filled out a ton of paperwork with those guys, and you still get an invoice in the mail from Akron Cardiology. That's all I can tell you.

ME: Well, I'm talking about with Akron City.

CLMT: You can talk to me.

ATTY: It's —

CLMT: I mean really you can.

ME: I —

ALJ: Mr. Reese, you have an attorney. That's why you have an attorney.

3

ATTY: That's why—

ME: That'S why you have an attorney. I know that in Cleveland that they have assistance programs at Metro Health at University and sometimes at the Cleveland Clinic. And perhaps they have the same thing at Akron City or Akron General that he could be hooked up with and which he would be able to obtain whatever he needs at no cost to himself.

ATTY: Right. Well, usually—I'm familiar with the free clinics from—because we have a lot of clients in that situation, but usually they won't do any additional kind of testing. I mean they might see someone, listen to their symptoms, write them down, <u>but as far as getting an electrocardiogram, I think we'll probably need a consultative exam.</u>

ALJ: Well, how about the nurse practitioner? Would she fill out just a questionnaire and check off—

CLMT: LuAnn Bailey would cooperate—

ATTY: Okay.

CLMT: —very fully.

ATTY: Okay.

CLMT: She's very nice, and LuAnn would cooperate. Any way she can help us, she would.

ATTY: Okay.

CLMT: She would talk to [the] Doctor over here. She would fill out forms, any of that. She's very nice.

ATTY: Well—

CLMT: She's very sincere.

ATTY: <u>We'll definitely have her write an evaluation</u>.

\* \* \*

4

ME: And if—so that we could get information that will objectively show us where we are.

ATTY: Right, what would be the most helpful form from LuAnn Bailey? I mean do we—would have her fill out—

ALJ: Well—

ATTY: —an RFC or something?

ALJ: —she's a treating source. So do you have some sort—the RFC form for Social Security or some specific form that you might develop from the cardiology listings?

ME: Now, do you drive?

CLMT: Yes, I do.

ME: Is it possible to get these things done at like Metro Health where they have five rating levels and including one that they've—because—

ATTY: That's true.

ME: Can you [sic] county arrange for it? I would have—can it be done such that he doesn't have any expense that he can't bear?

ATTY: Well, I know that Metro Health can be very helpful to people, you know, in treating—

ME: Even from Akron? I mean it's a different county.

ATTY: See, that I don't know. I don't know whether they—

ME: He needs a social worker. To go ahead and just inquire, it's a 10-minute job—

ATTY: Okay.

ME: —because I know that they go out of their way for people who have problems like his.

5

\* \* \*

ALJ: Ms. Bailey has written reports previously, so and if he's got a report with Bailey, it doesn't have to be detailed. It has to be something current that brings it up to date and says—

ATTY: Okay.

ALJ: —nothing has improved and this is what we've observed, this is what we document, and this is why we give medications because these are the conditions that he has.

ATTY: <u>Okay, and will you be sending him for a consultative exam?</u>

ALJ: <u>Well, the consultative exam would be more helpful if we had something from the treating physician.</u> I mean as opposed to just sending him to a doctor who is going to, you know, spend half an hour with him and has minimal records.

ATTY: Okay.

ALJ: If that doctor has some current records or some statements from treating physicians, I think it's to his advantage because he's got something from his treating source that documents the medication he's taking, why he's taking the medication and the explanation that he doesn't have more documentation because he doesn't have the resources and the system doesn't provide for them. Mr. Reese, I'm sorry, but this—you know, it's not that we don't believe you. It's just that—

CLMT: He, no problem.

ALJ: —we're required to have some documentation.

After more than four months passed and nothing was submitted to the ALJ by plaintiff's counsel the plaintiff was referred by the Social Security authorities for a consultative examination,

6

which was performed on July 25, 2006 by Dr. Yolanda Duncan. That examination included an electrocardiogram[1] and manual muscle testing. While Dr. Duncan concluded that the plaintiff's ability to stand and/or walk was restricted, she also concluded that he had no limitation in his ability to sit (with normal breaks) over an eight hour work day. She stated "Based on these findings, the patient should not have any difficulty with work related physical activities such as sitting." In reaching that conclusion the doctor took into consideration "that he has an ejection fraction of 5% to 10% which was verified by a study which was done in January 2003 that the patient brought in from the hospital." The doctor was not made aware of the fact that an echocardiogram performed in May 2004 reflected an increased ejection fraction of approximately 20%.

On September 26, 2006 the ALJ forwarded Dr. Duncan's report to plaintiff's counsel, and invited counsel to submit: (1) written comments on the report; (2) any additional records you wish me to consider (including a report from the treating physician; (3) written questions to be sent to Dr. Duncan; and, (4) a request for a supplemental hearing.

When no response had been received from counsel by October 25, 2006 the ALJ entered his decision finding the plaintiff not disabled.

In seeking review of that decision by the Appeals Council plaintiff's counsel submitted a two page letter setting out objections to the ALJ's decision. While therein counsel criticized the ALJ's interpretation of Dr. Duncan's report there was no suggestion that Dr. Duncan's examination was inadequate and/or that the ALJ had no obligation to contact the cardiologist who had seen the plaintiff in 2003 and 2004, Dr. Richard Josephson, whose nurse practitioner was Ms. Bailey to whom the plaintiff alluded at the evidentiary hearing.

---

[1]Defendant's brief (p. 9) states that the plaintiff had an abnormal echocardiogram. It is clear from Dr. Duncan's report that the diagnostic procedure was an electrocardiogram, R. 219.

7

The ALJ's Finding of Fact and Conclusions of Law were:

1. The claimant meets the insured requirements of the Social Security Act through March 31, 2007.

2. The claimant has not engaged in substantial gainful activity since January 23, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et. seq.*, 416.920(b) and 416.971 *et. seq.*).

3. The claimant has the following severe impairments: hypothyroidism, congestive heart failure and cardiomyopathy (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P Appendix 2.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the job duties of sedentary level work activity (Exhibit 7F).

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on April 25, 1955, and was 49 years old on the alleged disability onset date, which is defined as a younger individual age 45-49 (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. The vocational expert testified that the claimant has acquired work skills from past relevant work. Medical-Vocational Rules 201.15 and 201.20 support a finding that the claimant is "not disabled" (See SSR82-41 and 20 CFR Part 404, Subpart P, Appendix 2) (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1560(c), 404.1566,

> 404.1568(d), 416.960(c), 416.966, and 416.968(d)).

11. The claimant has not been under a "disability," as defined in the Social Security Act, from January 23, 2004, through the date of this decision (20 CFR 1520(g) and 416.920(g)).

On this appeal plaintiff advances three arguments.

The first of these is that "The ALJ did not fulfill his duty to complete the record consistent with the regulations and intent of the Act." This position is predicated upon the fact that the ALJ did not seek further information from Dr. Josephson.

The next is that "The ALJ did not have substantial evidence to find that this Plaintiff, Thomas Reese, was capable of a full range of sedentary work and thus because he had skills that transferred to sedentary work he could not be found disabled." In the course of that argument the plaintiff complains of the adequacy of Dr. Duncan's report and of the fact that it was not forwarded to Dr. Katzman for his comments, and it is stated that "in discussing the post hearing consultative examination, the ALJ said that it was scheduled when no records were provided as promised. However, there is no record that the attorney promised to send records." It is also argued that "there are no records from a treating source, an examining source, or from the Plaintiff, himself that suggest that he can sustain work at any level five days a week, forty hours a week."

The third argument is that "The ALJ did not articulate valid reasons for discounting Reese's credibility.

The standards which control on a review of this nature were summarized by the Sixth Circuit in <u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984) as follows:

> Judicial review of the Secretary's decision is limited in scope to determining whether the findings of fact made by the Secretary are supported by substantial evidence and deciding whether the Secretary employed the proper legal criteria in reaching her conclusion,

9

> Walston v. Gardner, 381 F.2d 580, 585 (6th Cir. 1967). This Court may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility, Myers v. Richardson, 471 F.2d 1265 (6th Cir. 1972). Rather "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive..." 42 U.S.C. §405(g).
>
> The Supreme Court has stated that "substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantiality of the evidence must be based upon the record taken as a whole. Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980), citing Futernick v. Richardson, 484 F.2d 647 (6th Cir. 1973). "Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the `substantiality of evidence must take into account whatever in the record fairly detracts from its weight'." Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978), quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474 (1951). "We may not focus and base our decision entirely on a single piece of evidence, and disregard other pertinent evidence." Hephner v. Mathews, 574 F.2d 359, 362 (6th Cir. 1978).

In resolving the issue of whether the defendant's final determination is supported by substantial evidence the decision upon judicial review cannot turn upon whether the reviewing court agrees with the Secretary's determination. Indeed, the reviewing court may conclude that substantial evidence would support a final determination contrary to that arrived at by the defendant and yet be obliged to affirm the defendant's final determination. In Mullen v. Bowen, 800 F.2d 535, at 545 (6th Cir. 1986), the court cited with approval the following from Baker v. Heckler, 730 F.2d 1147, 1150 (8th Cir. 1984):

> The substantial-evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposition decision.

Taking up plaintiff's first argument, it is plain from the colloquy at the evidentiary hearing

quoted herein that, contrary to the representation in plaintiff's brief that plaintiff's counsel did not promise to obtain additional records from the plaintiff's treating source, plaintiff's counsel assured the ALJ that she would obtain further medical evidence from Dr. Josephson or his nurse practitioner, Ms. Bailey. Having failed to obtain and submit such evidence and having failed to ask the ALJ to endeavor to do so after Dr. Duncan's report was forwarded by the ALJ or to request that the ALJ submit Dr. Duncan's report to Dr. Katzman, in this Court's opinion it is now untimely and unseemly to first raise the issue on this appeal[2]. This Court, therefore, finds no error in the ALJ relying on the representation by plaintiff's counsel that if there was further cogent evidence to be obtained from Dr. Josephson counsel would do so.

Turning to plaintiff's second argument, the fact no physician has stated that the plaintiff can work so he must, therefore, be deemed disabled turns the disability equation on its head. What is critical is that no physician has opined that the plaintiff suffers from an impairment, or combination of impairments, which had lasted or could be expected to last for at least one year which would render the plaintiff incapable of work activity at the sedentary level, as is required by 42 U.S.C. §423(d) to establish disability within the meaning of the Social Security Act. This Court does not consider the comment by Dr. David Sweet in a "To Whom It May Concern" letter dated February 4, 2004 that "I have told him [the plaintiff] specifically that he should not work at this time as I feel that working will further worsen his condition" as satisfying that standard, particularly when read in light of a patient note from that time by Dr. Josephson reading "pt. counseled on need to quit job, does a lot of lifting." Performing sedentary work does not require a lot of lifting.

Certainly Dr. Duncan's report provides support for the ALJ's conclusion that the plaintiff

---

[2]The failure to raise this issue before the ALJ or the Appeals Council could also have waiver implications.

is capable of sedentary work, and the vocational expert testified as to sedentary jobs that could be performed by an individual of the plaintiff's personal/vocational profile who was capable of sedentary work activities.

With regard to plaintiff's third argument, this Court sees no need to say anything more than the ALJ's detailed explanation as to why he did found the plaintiff capable of sedentary work, R. pp. 17-19, was well within his discretion under the zone of choice granted the trier of the facts.

It is recommended that judgment be entered affirming the defendant's final determination.


s/DAVID S. PERELMAN
United States Magistrate Judge


DATE:    September 24, 2008


## OBJECTIONS

Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).