UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
:
THOMAS J. REESE, JR., : CASE NO. 5:08-cv-00260-JG
:
    Plaintiff, : JUDGE JAMES S. GWIN
:
vs. : OPINION AND ORDER
: [Resolving Doc. 16]
MICHAEL ASTRUE, Commissioner of :
Social Security :
:
    Defendant. :
:
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On September 24, 2008, the Magistrate Judge issued a Report and Recommendation that this Court affirm the Administrative Law Judge's decision to deny the Plaintiff Reese benefits. [Doc. 16.] The Plaintiff Reese has not filed an objection to the Magistrate Judge's Recommendation. Accordingly, for the reasons stated below, this Court **ADOPTS** the Recommendation of the Magistrate Judge, and **AFFIRMS** the Administrative Law Judge's decision.

### I. Background

When a district court refers a matter to a magistrate judge, the district court is only required to conduct *de novo* review of those parts of the report and recommendation to which a party objects. 28 U.S.C. § 636. Absent objection, a district court may adopt the magistrate's report without review. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985).

Here, the Plaintiff Reese has not filed an objection within the statutorily required time. While

Case No. 5:08-cv-00260-JG
Gwin, J.

no review is necessary, this Court addresses Reese's contention in his initial brief to this Court that, "[t]he ALJ did not fulfill his duty to complete the record consistent with the regulations and the intent of the Act." [Doc. 13 at 8 (emphasis removed).][1/] In its regulations, the Social Security Administration says that it will re-contact evidentiary sources to fully develop the record when the evidence presented before the ALJ is inadequate. 20 C.F.R. § 404.1512(e).

This alleged procedural failure associated with failing to fully develop the record can be serious. The Sixth Circuit has held that, when the Administration violates procedural regulations designed to protect claimants, "reversal is required" even if "substantial evidence otherwise supports" the Administration's decision. *Wilson v. Commissioner of Social Security*, 378 F.3d at 541, 544 (6th Cir. 2004).[2/] The Magistrate Judge, however, concluded that Reese waived this argument because he failed to raise it before the ALJ or the Appeals Council. [Doc. 16 at 10.] Although this Court reaches the same ultimate conclusion as the Magistrate Judge, a thorough discussion of waiver before the ALJ is warranted because the Sixth Circuit has not yet addressed this issue.

Because Reese's claim that the Administration violated its own regulations depends on the completeness of the record before the ALJ, this Court first briefly explains Reese's disability claims and then describes the proceeding before the ALJ.

*I.A.   Facts: the Plaintiff seeks benefits for a congestive heart failure.*

In January 2003, Reese sought treatment for breathing difficulty. [Doc. 13 at 2; R. 260.]

---

[1/] In his brief to this Court, Reese also said that substantial evidence did not support the ALJ's finding that Reese was capable of sedentary work, and that the ALJ failed to articulate valid reasons for discounting Reese's credibility. [Doc 13 at 11.] The Magistrate Judge adequately addressed and rejected both of these contentions in the Report and Recommendation. [Doc. 16.]

[2/] *See also Vitarelli v. Seaton*, 359 U.S. 535, 547 (1959) (Frankfurter, J., concurring) (noting that, even if an agency proscribes a regulation requiring process above what is statutorily required, "that procedure must be scrupulously observed"); Note, *Violations by Agencies of Their Own Regulations*, 87 HARV. L. REV. 629 (1974).

Case No. 5:08-cv-00260-JG
Gwin, J.

During this treatment, doctors concluded that Reese suffered from congestive heart failure. [Doc. 13 at 2; R. 260.] Reese received treatment for this condition for about one month, until February 2003. [Doc. 13 at 2-3.] Reese then stopped treatment and stopped taking medication for this condition. [R. 260-261.] In explanation, Reese says that he "didn't have any money to buy [the medication]" at the time. [R. 261.] In January 2004, around one year later, Reese resumed treatment. [R. 263.] In this approximately one year treatment gap, Reese actually began working. [Doc. 13 at 2.] When Reese resumed treatment at this time, he saw Dr. David Sweet, who instructed Reese to stop working because of his heart condition. [Doc. 13 at 3.]

During this January 2004 treatment, however, tests indicated that Reese's heart condition had improved since his initial January 2003 treatment. [R. 265.] By May 2004, with continued medication and treatment, tests showed that his heart condition had even improved slightly from the January 2004 tests. [R. 265.]

In seeking disability and supplemental security income benefits, Reese claimed that he had been disabled since January 2003, when he first learned of his heart condition. [R. 98.] He also claimed that he had been unable to work since January 2004 when Dr. Sweet instructed him to stop working. [R. 98.] The Administration denied Reese's initial claim for benefits and denied his claim on reconsideration. Reese then requested review of this determination before an ALJ.

*I.B.   ALJ Hearing and Decision: the Medical Examiner and ALJ note the incompleteness of Reese's medical records, and the ALJ instructs Reese to re-contact his treating physician and nurse practitioner.*

During the proceeding before the ALJ, the Medical Examiner testified that, at the time of the January 2003 treatment, Reese "met a listing" for disability. [R. 273.] The Medical Examiner continued that Reese had shown signs of improvement when he resumed treatment in 2004. [R. 273.]

Case No. 5:08-cv-00260-JG
Gwin, J.

But the Medical Examiner also testified that he could not conclusively state whether Reese still met a listing at the time of the proceeding because of the Administration's durational requirement. [R. 273.] Under durational requirements, a claimant must show that a disability lasted or would last for 12 months before a claimant can receive benefits.[3/] [R. 273.] Because of this gap in treatment, the Medical Examiner stated that an update on Reese's status would "clarify everything." [R. 273.]

After the Medical Examiner noted the incompleteness of the record, the ALJ made several statements instructing Reese to obtain additional medical information from a previous treating physician and nurse practitioner in Akron: "So do you want to try to get whatever you can from Akron? . . . How about asking them for some sort of assessment?" [R. 275-276.] Reese's attorney agreed to re-contact the treating physician and nurse practitioner and to arrange to get this information to the ALJ. [R. 277.]

Reese never provided any additional information from his treating physician or nurse practitioner to the ALJ. After several months without receiving this information from Reese, the ALJ ordered a consultive examination with Dr. Yolanda Duncan. [R.18.] The ALJ ordered this examination despite the doubts he expressed on the exam's efficacy without additional records. [R. 280.][4/] Consulting Physician Duncan concluded that Reese "could perform sedentary level work activity." [R. 18.]

In his written decision, the ALJ noted that "the record is inconclusive for durational

---

[3/] In addition to requiring a claimant to meet a disability listing, before receiving benefits, a claimant must also meet the durational requirements in 20 C.F.R. §§ 404.1520(e), 416.920(e).

[4/] The ALJ stated: "Well, the consultative exam would be more helpful if we had something from the treating physician. I mean as opposed to just sending him to a doctor who is going to, you know, spend half an hour with him and has minimal records. . . . If [the consultative exam] doctor has some current records or some statements from treating physicians, I think it's to his advantage." [R. 280.]

-4-

Case No. 5:08-cv-00260-JG
Gwin, J.

requirement." [R. 17.] The ALJ also noted that he ordered the consultive examination with Physician Duncan "when no treating records were provided by the claimant's attorney as promised at the hearing." [R. 18.]

I.C. *The Magistrate Judge's Decision: the Magistrate Judge finds no error in the ALJ's reliance on Reese to re-contact to obtain additional records.*

The Magistrate Judge found it "plain" that "[P]laintiff's counsel assured the ALJ that she would obtain further medical evidence from [the treating physician] or nurse practitioner." [Doc. 16 at 10-11.] Because Reese failed to obtain the evidence, the Magistrate Judge held that "it [wa]s untimely and unseemly to first raise the issue [of the ALJ's failure] on this appeal." [Doc. 16 at 11.] The Magistrate Judge then noted that Reese's "failure to raise this issue before the ALJ or the Appeals Council could also have waiver implications." [Doc. 16 at 11.]

## II. Analysis

The ALJ stated that the record was inconclusive with regard to the durational requirement. But the ALJ did not re-contact any of Reese's treating sources. This Court will first address whether the ALJ violated any social security regulations in failing to re-contact Reese's treating physician or nurse practitioner and requesting that Reese obtain the relevant records himself. After determining whether the ALJ violated any regulations, this Court will then address the Magistrate Judge's conclusion that Reese's argument on this procedural failure was untimely and possibly waived.

II.A. *Procedural Failure*

This section will first explain the Sixth Circuit case law requiring reversal when the Social Security Administration fails to follow its own procedural regulations and then address whether the Administration violated a procedural regulation here.

Case No. 5:08-cv-00260-JG
Gwin, J.

> *II.A.1. Procedural Failure: to ensure that procedural protections afforded to claimants are not merely illusory, a court must reverse when the Administration fails to comply with its own regulations.*

As mentioned above, the Sixth Circuit has held that reversal of the ALJ is required when the Administration violates its own administrative regulations. *Wilson*, 378 F.3d at 541. In *Wilson*, the ALJ, in contravention of the treating physician's opinion, denied the claimant benefits. *Id.* at 545. Social Security Administration regulations required that an ALJ give "good reasons" for rejecting a treating physician's opinion. *Id.* (quoting 20 C.F.R. § 1527(d)(2)). In his ruling, the ALJ acknowledged the treating physician's opinion, but failed to further address why he declined to accept the treating physician's opinion. *Id.*

Because the ALJ failed to "'give good reasons' for not giving weight to a treating physician," the Sixth Circuit reversed the ALJ's decision. *Id.* at 544 (citations omitted). The Administration had said that the error was harmless because substantial evidence still supported the ALJ's decision. The Sixth Circuit, however, found this argument unpersuasive:

> A court cannot excuse the denial of a mandatory procedural protection simply because . . . there is sufficient evidence in the record [for the ruling] and, thus, a different outcome on remand is unlikely.

*Wilson*, 378 F.3d at 546. To ensure that procedural protections granted to claimants are not merely "illusory," a court must reverse an ALJ's decision when the Administration fails to comply with its own procedural regulations that are designed to protect claimants. *Id.*

> *II.A.2. Re-contacting a Treating Source: regulations require the Administration to re-contact a treating source when the record is incomplete.*

Here, the Social Security Administration regulations instruct a disability benefits claimant that, "[y]ou must provide medical evidence showing that you have an impairment(s) and how severe it is

-6-

Case No. 5:08-cv-00260-JG
Gwin, J.

during the time you say that you are disabled." 20 C.F.R. § 404.1412(c). But the Administration takes on the responsibility of re-contacting medical sources when necessary:

> (e) When the evidence we receive from your treating physician or psychologist is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, *we will* take the following actions.
>
> > (1) *We will* first re-contact your treating physician . . . to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when . . . the report does not contain all the necessary information.

20 C.F.R. § 404.1512(e) (emphasis added). These regulations protect a claimant by ensuring that the record is completely developed before an ALJ makes a decision. *Cf. Caster v. Astrue*, No. 07-50-DLB, slip op., 2008 WL 717827, *4 (E.D. Ky. Mar. 17, 2008). In *Caster*, the district court held that an internal inconsistency in a treating physician's opinion "left [the court] to speculate as to the [opinion's] meaning." *Id.* at *4. The court therefore held that the ALJ erred in failing to re-contact the treating physician, and that this error "require[d] a remand." *Id.* at *4.

Here, the record shows no evidence suggesting that the Administration re-contacted any source of medical evidence, even though the ALJ noted that the record was "inconclusive for the durational requirement." [R. 17.] Instead of re-contacting any sources to receive the necessary records as required under the regulations, the ALJ instead asked Claimant Reese to obtain the records. The procedural failure here is more problematic than that in *Caster*. Setting aside any potential waiver problems, not only did the Administration fail in its expressly required duty, the Administration relied upon the claimant.

While it is true that Reese's attorney agreed to obtain the additional records, the attorney only agreed to this at the ALJ's insistence. The ALJ, in ordering a consultative exam at the

Case No. 5:08-cv-00260-JG
Gwin, J.

Administration's expense, tried to ensure a complete record before a decision. But this attempt to complete the record does not obviate the importance of the re-contacting requirement–the ALJ himself questioned the efficacy of the consultative exam without additional treatment notes.

The Administration should not be excused from this duty, a duty that was designed to protect claimants, simply by delegating that duty to the very claimants that the procedure was designed to protect.

Here, the ALJ violated the Administration's regulations. A remand is required for this violation unless Reese is precluded from raising the argument before this Court because he did not object to placing the requirement upon him.

II.B.   *Untimeliness and Issue Preclusion*

In requiring Reese to re-contact medical sources to obtain additional medical information, the ALJ violated a procedural regulation that was designed to protect claimants. The Magistrate Judge, however, held that the Reese's procedural failure claim made to this Court was untimely. [Doc. 16 at 11.] The Magistrate Judge also noted that the failure to raise this argument "before the ALJ or the Appeals Council could also have waiver implications." [Doc. 16 at 11.]

A court reviewing an administrative agency's decision generally cannot consider arguments that were not first raised to the administrative agency. *See Unemployment Compensation Commission of Territory of Alaska v. Aragon*, 329 U.S. 143, 155 (1946)[5]; 2 Richard J. Pierce, Jr. ADMINISTRATIVE LAW TREATISE § 15.8 (4th ed. 2002).

The Supreme Court, however, in *Sims v. Apfel*, 530 U.S. 103, 112-113 (2000) created an

---

[5] "A reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the Commission of an opportunity to consider the matter, make its ruling, and state the reasons for its action." *Aragon*, 329 U.S. at 155.

Case No. 5:08-cv-00260-JG
Gwin, J.

exception to this rule in Social Security benefits cases. In *Sims*, the Court held that a claimant could raise arguments before the reviewing district court even if those arguments were not first raised before the Social Security Appeals Council. *Sims*, 530 U.S. 112-113.

The issue in this case though, is whether Reese should be foreclosed from challenging the ALJ's failure to re-contact that treating physician because he did not object to this failure in the proceeding before the ALJ. Reese also did not object to the ALJ's procedural failure before the Appeals Council, but the Court in *Sims* held that such a failure would not later foreclose the arguments before the reviewing district court.

The *Sims* plurality expressly stated that it did not decide whether a claimant forfeited district court review of issues that were not first raised to the ALJ. *Sims*, 530 U.S. at 107 ("Whether a claimant must exhaust issues before the ALJ is not before us.") The dissent, however, "assume[d] the plurality would not forgive the requirement that a party ordinarily must raise all relevant issues before the ALJ." *Sims*, 530 U.S. at 117 (Breyer, J., dissenting) (citing *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 15 (2000)).

The Sixth Circuit has not addressed this issue that the Supreme Court expressly left undecided. As guidance then, this Court will examine the decisions of other appeals courts and those principles enunciated in the *Sims* decision itself.

> II.B.1. Issue Preclusion before the ALJ: several appeals' courts have held, to varying degrees, that issue preclusion is required.

The First Circuit has confronted issue preclusion before the ALJ in the wake of the *Sims* decision. *Mills v. Apfel* 244 F.3d 1 (1st Cir. 2001), *cert. denied* 534 U.S. 1085 (2002).

In *Mills*, the First Circuit Court of Appeals affirmed the district court's conclusion that the

Case No. 5:08-cv-00260-JG
Gwin, J.

claimant waived an argument that was not first presented to the ALJ. *Mills*, 244 F.3d at 8. There, the ALJ denied the claimant benefits based on a finding that the claimant could return to her previous jobs. *Id.* For the first time before the district court, however, the claimant argued that these past jobs were irrelevant to the disability determination because they were sporadic. *Id.* The claimant argued, that the ALJ should therefore not have considered whether the claimant could return to her past jobs, but whether "there were other jobs in the economy available." *Id.*

While this argument on past relevant jobs had "merit" under First Circuit law, the court held that the claimant waived the argument. The court held that an extension of *Sims* to the ALJ hearing situation would "cause havoc [and] severely undermin[e] the administrative process." *Mills*, 244 F.3d at 8. The court noted that, had the claimant raised this argument before the ALJ, the ALJ "could easily have considered and expressly found that there were other jobs in the economy available to Mills." *Id.* at 8. This is because, after an ALJ finds that a claimant cannot return to past relevant work, the ALJ must still determine that the claimant cannot perform other jobs in the economy before the ALJ can make a finding of disability. *Id.* at 8. The court rejected the claimant's argument that the ALJ had an "independent obligation to get the matter right." *Id.* at 8.

After the waiver discussion, however, the court also noted that it would have reached the same result on the merits. *Id.* at 8.

The Ninth Circuit reached a similar result in a case decided before *Sims*. In *Meanel v. Apfel, 172 F.3d 1111 (9th Cir. 1999)*, the claimant attempted to submit new job availability statistics to the district court that she had not presented to the ALJ or the Appeals Council. *Id.* at 1115. The court held that, "at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal. *Id.* at 1115. Subsequent to

Case No. 5:08-cv-00260-JG
Gwin, J.

*Sims*, the Ninth Circuit reaffirmed the *Meanel* holding in an unpublished decision. *Robinson v. Apfel,* 232 F.3d 896 (9th Cir. 2000).

> *II.B.2. The Sims Case Applied to Reese: the reasons justifying the Supreme Court decision in Sims justify extension of the holding to Reese's case.*

In *Sims*, the Court began by noting that issue exhaustion requirements are normally mandated by statutes. *Sims*, 530 U.S. at 107. In Social Security cases, however, no statute or regulation explicitly requires issue exhaustion. *Id.* at 109.

A judicially imposed requirement of issue exhaustion is generally appropriate for adversarial proceedings. *Id.* at 110. Social Security cases, however, "are inquisitorial rather than adversarial." *Id.* at 111. The ALJ has a "duty to investigate the facts and develop the arguments both for and against granting benefits." *Id.* at 111. Here, the exchange between the ALJ, the claimant Reese, Reese's attorney, and the Medical Examiner demonstrates the informal nature of this proceeding.

This case resembles *Mills*, because if Claimant Reese had raised this objection before the ALJ, the ALJ could have easily addressed and corrected the objection at that time. As in *Mills*, this point of administrative efficiency weighs heavily in favor of requiring a claimant to raise all relevant arguments before the ALJ.

Reese's complaint to this Court, however, is fundamentally different than the complaint in *Mills*. In *Mills*, the claimant complained to the district court that the ALJ failed to disregard her past jobs in determining past work experience. *Mills*, 244 F.3d at *8. The claimant said that the ALJ should have disregarded the past jobs because an Administration regulation stated that the it will "generally consider" past jobs irrelevant when the claimant "worked only off-and-on or for brief periods of time." 20 C.F.R. § 416.965(a).

-11-

Case No. 5:08-cv-00260-JG
Gwin, J.

The regulation, however, did not require the ALJ to take any action. The regulation did not even mandate that an ALJ always disregard past work experience that was brief. *See* 20 C.F.R. § 416.965(a) (noting that this is only a "general[]" rule). Accordingly, the *Mills* court rejected the claimant's contention that the "ALJ[ had an] independent obligation to get the matter right." *Mills, 244 F.3d at *8*. The claimant said that the ALJ got the substance of the decision wrong in failing to disregard her past jobs, even though the claimant never suggested that this general rule should apply.[6/]

In Reese's case, however, the Administration's regulation do impose an independent procedural obligation on the Administration to re-contact treating sources when an ALJ is unable to make a benefits determination. *See* 20 C.F.R. § 404.1512(e). Reese objection here does not go to the substance of the ALJ's decision, but rather to the procedures that the ALJ followed.

While this case has some important differences from *Mills*, this Court holds that the Reese waived this procedural objection when he and his attorney failed to object to the ALJ's instruction to re-contact his treating physician at Akron and the nurse practitioner. When, as in this case, the claimant is represented by counsel, the claimant waives any objection to an ALJ's procedural failure if the objection is not made to either the ALJ or the Appeals Council. *See Meanel*, 172 F.3d at 1115 (holding that "absent counsel" a claimant must raise all issues before the ALJ); *cf. Wilson v. Commissioner of Social Security*, 280 Fed.Appx. 456 (6th Cir. 2008) (holding that absent special circumstance, such as an unrepresented claimant, an ALJ does not have a general duty to develop the

---

[6/] The appeals court opinion does not make it clear that the brief nature of these jobs was ever even presented to the ALJ. The Magistrate Judge, however, made clear in his report and recommendation that, "although the plaintiff testified at hearing that her work was of short duration, she did not argue before either the [ALJ] or the Appeals Council that such work should not have constituted past relevant work." *Mills v. Apfel*, No. 99-26-P-H, 1999 WL 33117114, *3 (D. Me. Nov. 24, 1999).

-12-

Case No. 5:08-cv-00260-JG
Gwin, J.

record).[7]

Because Reese and his attorney failed to object administratively, Reese cannot now argue before this Court that the ALJ failed to comply with Administrative regulations.

### III. Conclusion

For the reasons stated above, the Court **ADOPTS** Magistrate Judge's Report and Recommendation and **AFFIRMS** the decision of the ALJ.

IT IS SO ORDERED.


Dated: November 13, 2008                  s/    *James S. Gwin*
                                          JAMES S. GWIN
                                          UNITED STATES DISTRICT JUDGE

---

[7] A different holding may be required when a claimant is without counsel. If a claimant were unrepresented in a proceeding similar to Reese's, requiring the claimant to object at the ALJ level would impose a difficult burden on claimants. The claimant would have the burden of becoming familiar with the Administration's procedural regulations, and be vigilant enough during this non-adversarial proceeding to object when the impartial ALJ violates the Administration's own regulations. *But cf. Sims*, 530 U.S. at 114 (O'Connor, J., concurring) ("I think it would be unwise to adopt a rule that imposes different issue exhaustion obligations depending on whether claimants are represented by counsel.")